**EDWIN DEAN EPPS, OLIVIA C. TORRES,**
**and RICHARD (Rick) G. JONES, JR.,**
**for themselves and on behalf of all**
**similarly situated individuals**

        **Plaintiffs,**

**v.**                               **Case No. 3:17-cv-00253-JAG**

**ORANGE LAKE COUNTRY CLUB, INC.**
**d/b/a Orange Lake Resort and Country Club,**
**Orange Lake Resort and Country Club, Inc.,**
**and Orange Lake Resorts**

**and**

**OLCC VIRGINIA, LLC,**

**and**

**ORANGE LAKE HOLDINGS, LLP,**
**d/b/a Orange Lake Resorts**

        **Defendants.**

---

## FIRST AMENDED CLASS COMPLAINT

---

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), the Plaintiffs, Edwin Dean Epps, Olivia C. Torres and Richard (Rick) G. Jones, Jr. against the Defendants, Orange Lake Country Club, Inc. d/b/a Orange Lake Resort and Country Club, Orange Lake Resort and Country Club, Inc. and Orange Lake Resorts, OLCC Virginia, LLC, and Orange Lake Holdings, LLP, on behalf of themselves and other similarly situated individuals, and for their First Amended Class Complaint allege the following claims:

# INTRODUCTION

1.      This action is brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x. The FCRA imposes on employers that use a background check or other consumer report regarding an employee or job applicant several important requirements designed to protect consumers like Plaintiff.

2.      Plaintiffs applied for jobs at Defendants. Defendants obtained their consumer reports from Sterling Infosystems, Inc. and Insurance Information Exchange, L.L.C., d/b/a iiX, both consumer reporting agencies ("CRAs").

3.      Plaintiffs contend Defendants systematically violate § 1681b(b)(2) of the FCRA by obtaining consumer reports in the form of criminal background reports and driving record reports acquired on the basis of two standardized consent forms which, among other things, require the job applicant to agree, as a condition of employment, that Defendants do not engage in discrimination, and require applicants to notify Defendants within five days of a challenge to the accuracy of the report (contrary to the provisions of the FCRA).

4.      Both forms contain substantial extraneous language not permitted by the FCRA's standalone disclosure requirement, including, as to the general consumer report disclosure form, a full page of State-mandated disclosures and, as concerns the driving report disclosure form, a half page of information concerning the specific employer requirements that must be met for a driving position.

5.      Given the faulty disclosures, the resulting written authorizations signed by Plaintiffs, if any, were defective and without effect. Defendants therefore lacked the Congressinally mandated permission to access Plaintiffs background checks.

6.     Defendants therefore repeatedly accessed consumers' background reports without having any lawful permission for doing so.

## JURISDICTION AND VENUE

7.     The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681, and 20 U.S.C. § 1331.

8.     Plaintiff Epps lives in Quinton, Virginia, which is in this District and Division.

9.     Plaintiff Torres and Jones live in Williamsburg, Virginia, which is in this District.

10.     In June 2014, Epps applied for a job with OLCC Virginia, LLC. in Williamsburg, Virginia, which is within this District.

11.     In April 2015 Torres and Jones applied for jobs with OLCC Virginia, LLC  in Williamsburg, Virginia.

12.     Defendants Orange Lake Country Club, Inc. and OLCC Virginia, LLC maintain their registered agents for service of process in Glen Allen, Virginia, which is located in this District and Division.

13.     Defendants solicit potential time-share purchasers from throughout this District and Division.

14.     Potential time-share purchasers from throughout this District and Division attend sales presentations and take tours at Defendants' property in Williamsburg.

15.     Defendant Orange Lake Holdings, LLP is transacting business in the Commonwealth of Virginia.

16.     Defendant Orange Lake Holdings, LLP has contracted to supply services or things in the Commonwealth of Virginia.

17.     Defendant Orange Lake Holdings, LLP has caused tortious injury in the Commonwealth of Virginia by an act or omission outside of the Commonwealth of Virginia given it regularly does or solicits business or engages in any other persistent course of conduct or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth.

18.     Defendant Orange Lake Holdings, LLP also ordered and had access to the Sterling and iiX consumer reports, including but not limited to those involving Virginians.

19.     Notwithstanding the foregoing activities, Defendant Orange Lake Holdings, LLP is not authorized to do business in Virginia nor does it maintain a registered agent for service of process in Virginia.

## NAMED PARTIES

20.     Edwin Dean Epps (hereinafter "Epps" or "Plaintiff") is a "consumer" who is protected and governed by the FCRA.

21.     Olivia C. Torres (hereinafter "Torres" or Plaintiff") is a "consumer" who is protected and governed by the FCRA.

22.     Richard (Rick) G. Jones, Jr. (hereinafter "Jones" or "Plaintiff") is a "consumer" who is protected and governed by the FCRA.

23.     Defendant Orange Lake Country Club, Inc. d/b/a Orange Lake Resort and Country Club, Orange Lake Resort and Country Club, Inc. and Orange Lake Resorts (hereinafter "OLCC, Inc.") is a Florida corporation with its principle office located at 8505 West Irlo Bronson Memorial Hwy, Kissimmee, FL 34747.

24.     Defendant OLCC Virginia, LLC (hereinafter "OLCC Virginia") is a Delaware Limited Liability Company with its principal place of business at 200 English Garden Way, Williamsburg, VA 23188.

25.     Defendant Orange Lake Holdings, LLP, d/b/a Orange Lake Resorts (hereinafter "OLH, LLP"), is a Florida Limited Liability Partnership with its principle office located at 8505 West Irlo Bronson Memorial Hwy, Kissimmee, FL 34747.

26.     Defendant OLH, LLP is the parent company of OLCC, Inc. and OLCC Virginia, LLC.

27.     Defendants own, operate and manage time-share vacation resorts and market time share units.

28.     Defendant OLH, LLP is the parent company of Orange Lake Resorts and Silverleaf Resorts, encompassing 26 resorts and 7,200 villas in the U.S., with over 320,000 timeshare owners and 6,000 employees. http://www.streetinsider.com/Press+Releases/Greenberg+Traurig+Represents+Orange+Lake+Holdings,+LLP+and+Subsidiaries+in+Acquisition+of+Silverleaf+Resorts,+Inc./10598472.html.

29.     Defendants OLH, LLP and OLCC, Inc. own, operate and manage the 26 resorts and 7,200 villas through numerous subsidiaries and affiliates including, but not limited to: OLCC Florida, LLC; OLCC Hotels, LLC; OLCC Nevada, LLC; OLCC South Carolina, LLC; OLCC Tennessee, Inc.; OLCC Texas, LLC; OLCC Vermont, LLC; OLCC Virginia, LLC; OLCC Wisconsin, LLC; Orange Lake Country Club Realty, Inc.; Orange Lake Country Club Villas Condominium Association, Inc.; Orange Lake Country Club Villas Condominium Association II, Inc.; Orange Lake Country Club Villas Condominium Association III, Inc.;

Orange Lake Country Club Villas Condominium Association IV, Inc.; and Orange Lake Country Club Villas Condominium Association V, Inc.

30.     Defendants OLH, LLP and OLCC, Inc. previously owned, operated and managed some of their resorts and villas through several now inactive subsidiaries and affiliates including but not limited to:  OLCC Arizona, LLC; OLCC Hawaii, LLC; OLCC Illinois, LLC; OLCC Missouri, LLC; and Orange Lake Golf Resort, LLC.

31.     During the 5 years preceding the filing of this Complaint, Defendants OLCC, Inc., OLCC Virginia, LLC, and OLH, LLP have obtained and used consumer reports for employment purposes for both their own applicants and employees and for the applicants and employees of their numerous subsidiaries and affiliates, including those listed in the two previous paragraphs.

32.     At all times relevant hereto Defendants were each a "user" of the consumer reports of Plaintiffs, as governed by the FCRA.

33.     The forms which Plaintiff had to sign purportedly to authorize Defendants to obtain his criminal background consumer report and his driving record consumer report each says that "Orange Lake Resorts" will be procuring the consumer reports.

34.     Defendants did not procure Plaintiff's reports in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

## UNNAMED PARTIES

35.     Sterling Infosystems, Inc. supplied the criminal background consumer report for Plaintiff and similarly situated individuals to Defendants.

36. Sterling was and is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f).

37. Sterling was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties like Defendants.

38. Insurance Information Exchange, L.L.C. d/b/a iiX ("iiX") supplied the driving record consumer report for Plaintiff and similarly situated individuals to Defendants.

39. iiX was and is a "consumer reporting agency" as defined in 15 U.S.C. § 1681(f).

40. iiX was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d), to third parties like Defendants.

**FACTS AS TO PLAINTIFFS**

41. Epps applied for a job with OLCC Virginia on June 30, 2014.

42. Torres and Jones applied for jobs with OLCC Virginia on or about April 13, 2015.

43. Pursuant to its standard hiring practices, Defendants had Plaintiffs sign two documents entitled "General Background Disclosure and Authorization" (the "General" form) and "Driving Record Disclosure and Authorization" (the "Driving Record" form).

44. Although Plaintiffs applied for work with OLCC Virginia, the disclosure forms presented to them to disclose that a consumer report would be obtained about them refer only to "Orange Lake Resorts" as the party that would obtain those reports.

45. The forms do not mention OLCC Virginia or any other entities by their registered names (shown in the case caption). It is therefore unclear which Defendant was disclosing its

intent to obtain consumer reports about Plaintiffs, and for which Defendant, if any, Plaintiffs purportedly authorized that reports be obtained.

46.     Plaintiffs' authorization therefore applied to Orange Lake Resorts and no other entity, although discovery will show that Defendants accessed Plaintiffs' background reports.

47.     Discovery will reveal that Defendants use the same forms for all of their entities nationwide, meaning that entities which have not lawfully disclosed to consumers that they will obtain consumer reports about them obtained reports anyway. This violates Section 1681b(b)(2) on its face.

48.     Discovery will further show that Defendants all use the trade name "Orange Lake Resorts" in conducting their businesses, and that other entities affiliated with Defendants trade under the Orange Lake Resorts name.

49.     The forms Defendants use are standardized and drafted and prepared by Sterling and by iiX and supplied to their customers such as Defendants.

50.     The "General" form contains numerous references to the laws of states other than Virginia, which references render the form unnecessarily long and confusing, and the disclosure not standalone.

51.     Numerous courts have said that the inclusion of state-specific and irrelevant notices within a disclosure is sufficient to state a claim for a willful violation of the FCRA disclosure requirements. *See Woods v. Caremark PHZ, LLC*, 2015 U.S. Dist. LEXIS 148051, 2015 WL 6742124 (W.D. Mo. Nov. 2, 2015) and citations therein.

52.     Indeed, there are at least four cases where the court overruled a motion to dismiss in cases involving Sterling's disclosure form, the same one Plaintiffs challenge here. *Robrinzine v. Big Lots Stores, Inc.*, 156 F.Supp.3d 920 (N.D. Ill Jan. 19, 2016); *Martin v. Fair Collections*

*& Outsourcing, Inc.*, 2015 U.S. Dist. LEXIS 86129, 2015 WL 4064970 (D. Md. Jun. 30, 2015);

*Case v. Hertz Corp*, 2016 U.S. Dist. LEXIS 41210 (N.D. Cal. Feb. 26, 2016); and *Jones v.*

*Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324 (S.D.N.Y Jan. 27, 2015).

53.     The extraneous material contained within the "General" form led one judge to comment about the same form, "All of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing." *Jones*, 81 F. Supp. 3d at 333.

54.     The "General" form provides "if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify COMPANY within five business days of my receipt of the Report that I am challenging the accuracy of such information with STERLING."

55.     The "Driving Record" form provides "if I disagree with the accuracy of the purported disqualifying information in the Report, I must notify Orange Lake within five (5) business days of my receipt of the Report that I am challenging the accuracy of such information with the outside agency."

56.     These are false statements of the law. The FCRA permits a consumer to dispute an inaccuracy at any time. 15 U.S.C. § 1681i. There is no time restriction for dispute or notification requirement to employers.

57.     Perhaps the employer meant to say that unless the applicant notified the company of a dispute within five business days of receiving the report, the company will take adverse action.  However, that was not what was said. The chosen language is instead confusing and unnecessary.

58.     What was said could be read as informing the applicant that he loses his right to dispute inaccurate information with Sterling or iiX unless the applicant notifies Orange Lake Resorts of the dispute within five days. This is incorrect, as the FCRA permits disputes of inaccurate information to be made at any time.

59.     Moreover, even if Defendants had accurately set forth a summary of Plaintiffs' dispute rights under 15 U.S.C. § 1681i, such a summary would have been extraneous to the sole disclosure that is permitted—that a consumer report may be obtained for employment purposes—thereby unnecessarily lengthening the disclosure form.

60.     Next, both the "General" form and the "Driving Record" form say that the applicant "fully understand[s] that all employment decisions are based on legitimate, non-discriminatory reasons."

61.     This is a deceptive ploy; a job applicant cannot know what the employer's hiring practices are (or will be) or whether it acts (or will act) in a discriminatory manner.

62.     No law requires job applicants to admit in advance that an employer's hiring decisions are non-discriminatory.

63.     While that language does not expressly include the words "waiver" or "release," that is their import—an acknowledgement that the employer was not and will not act unlawfully, which the employer would no doubt use to short-circuit any lawsuit claiming discrimination. Or, it is meant to confuse consumers into believing that they have no rights or recourse against Defendants when an adverse-employment action is taken.

64.     Waivers of a consumer's right to sue for prospective acts are generally condemned as unenforceable, and courts will hold them to be void. *Massey v. On-Site Manager, Inc.*, 2011 U.S. Dist. LEXIS 104823, 2011 WL 4356380, *3-5 (E.D.N.Y. Sept. 16, 2011)

(denying Defendant's attempts to enforce waiver as to Plaintiff's FCRA claim for willful conduct).

65.     This Court held similarly in *Thomas v FTS USA, LLC*, 2016 U.S. Dist. LEXIS 85545, *18-19 (E.D. Va. June 30, 2016) and *Milbourne v. JRK Residential America, LLC*, 3:12CV861, 2015 WL 1120284 (E.D. Va. March 11, 2015).

66.     Courts have held that the insertion of "release of liability" language voids the disclosure.

67.     The disclosure/authorization forms that Defendants provided to Plaintiffs violated § 1681b(b)(2) of the FCRA because they did not consist "solely of the disclosure that the consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i); *Avila v. NOW Health Group, Inc.*, 2014 U.S. Dist LEXIS 99718, 2014 WL 3537825, *2-3 (N.D. Ill. July 17, 2014); *Reardon v. ClosetMaid Corp*, 2013 U.S. Dist. LEXIS 169821, 2013 WL 6231606, *10-11 (W.D. Pa. Dec. 2, 2013) (finding the disclosure of liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626, 2012 WL 245965, *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and the FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document.").

68.     Interestingly, the "Driving Record" form used by the company stands in stark contrast to the "General" form background check form in readability because it utilizes a larger font size.

69.     However, as set forth above, the Driving Record form is also cluttered with much of the same extraneous and prohibited material as the General form, save only the state specific notices.

70.     Moreover, the Driving Record form contains additional, extraneous and prohibited material not found in the General form, specifically a listing of all of the driving-related requirements that must be met for employment and a description of what are referred to as "Type A" and "Type B" violations.

71.     Because the disclosures were illegal and ineffective, the written authorizations, if any, provided by Plaintiffs to Defendants, to obtain a copy of their consumer report and driving record report are ineffective, illegal, and void.

72.     This resulted in an impermissible pull of Plaintiffs' consumer reports and driving record reports by Defendants and by Sterling Infosystems, Inc. and iiX.

73.     These impermissible pulls were, in and of themselves, violations of Section 1681b(b)(2). Whether Plaintiffs were hired or the resulting consumer reports about them contained inaccurate information are irrelevant to this claim.

74.     Plaintiffs were unaware of their rights under the FCRA in part because Defendants did not provide them with a copy of the disclosure forms at the time they signed them or during their period of employment with Defendants.

75.     Epps' period of employment with OLCC Virginia, LLC ended in December 2015.

76.     Torres' period of employment with OLCC Virginia, LLC ended in October 2016.

77.     Jones' period of employment with OLCC Virginia, LLC ended in May 2016.

78.     Torres and Jones learned that their rights under the FCRA had been violated about the time that Epps did, in October 2016.

79.     Upon receiving a copy of the disclosure forms in September 2016, Epps discovered the violations that are the basis for liability in this case.

# LEGAL FRAMEWORK

## A.  Statutory Provisions.

80.  Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain

a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
> (i)  a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii)  the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

81.  The FCRA requires that the disclosure be "in writing," in a standalone document.

82.  As a result of the defective disclosure, Defendants procured consumer reports about Plaintiffs and those similarly situated for employment purposes without first obtaining a proper, written authorization to do so.

## B.  Injury-In-Fact Allegations for Disclosure & Authorization Violation.

83.  Section 1681b(b)(2)(A) "establishes a right to specific information in the form of a clear and conspicuous disclosure.  The statutory requirement that the disclosure be made in 'a document that consists solely of the disclosure' helps to implement the textual command that the disclosure be clear and conspicuous."  *Thomas*, 2016 U.S. Dist. LEXIS 85545, at *18–19.

84.  Section 1681b(b)(2)(A) also "establishes a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances."  *Id.* at *19. The standalone disclosure requirement is part and parcel to this statutorily permitted invasion of privacy.

85. Both protections established by § 1681b(b)(2)(A) (the right to specific information and the right of privacy) "are clearly substantive, and neither is technical nor procedural." *Id.*

86. By failing to provide Plaintiffs and the class members that they seek to represent with a clear and conspicuous disclosure, in writing in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes as required by § 1681b(b)(2)(A), Defendants denied Plaintiffs and the class members information to which they were specifically entitled under the FCRA.

87. By procuring the consumer reports of Plaintiffs and the class members that they seek to represent without making the disclosure required by § 1681b(b)(2)(A), Defendants have unlawfully invaded Plaintiffs and the class members' rights of privacy created by the FCRA. *See id.* at 32-33. ("Thomas … has alleged that Defendants invaded the statutory right to confidentiality of his personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent, as required by § 1681b(b)(2)(A). This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing.").

88. The informational injury and the breach of privacy injury suffered by Plaintiffs and the class members as a result of Defendants' violations of § 1681b(b)(2)(A) are particularized because both injuries happened to Plaintiffs and each class member.

89. The informational injury suffered by Plaintiffs and the class members as a result of Defendants' violations of § 1681b(b)(2)(A) is real and concrete because "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will

constitute a concrete injury [and] [b]y extension, it is well within Congress' power to specify the form in which that information must be presented." *Id.* at *27–28. Here, Plaintiffs were deprived of the Congressionally mandated standalone disclosure as a prerequisite to Defendants' accessing Plaintiffs' consumer reports.

90.    The invasion of privacy injury suffered by Plaintiffs and the class members as a result of Defendants' violations of § 1681b(b)(2)(A) is real and concrete because "it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue" and Congress has extended the right of privacy to information contained within one's consumer report. *Id.* at *30–31.

91.    Discovery will show that Plaintiffs' and Class Members' consumer reports contained a wealth of private information which Defendants had no right to access absent a specific Congressional license to do so. The report included, *inter alia*, Plaintiffs' dates of birth, address histories, educational backgrounds, drivers' license numbers, driving history, and partial Social Security numbers. By procuring reports containing this private information and delving deep into Plaintiffs' personal lives without complying with the FCRA's disclosure requirements, Defendants illegally invaded Plaintiffs' right to privacy.

92.    Defendants' illegal invasion into Plaintiffs' privacy created a foreseeable risk of harm. Plaintiffs were required to provide a blanket authorization to a broad range of individuals, employers, federal and state agencies and educational institutions to release personal and private information about him to Defendant and the screening company. Requiring Plaintiffs to execute a disclosure or authorization document containing broad authorizations while materially misstating the applicable legal principles created a foreseeable risk of harm that Plaintiffs would

be led to believe they had waived valuable rights against Defendants, the consumer reporting agency, or anyone else providing information about Plaintiffs.

93.    Here, the absence of a proper and legal disclosure means that Defendants invaded Plaintiffs' privacy by accessing their consumer reports without having the legally required permission to do so.

94.    While Plaintiffs understand that employers like Defendants choose to use background reports in their hiring processes, Plaintiffs would prefer to keep their private information just that—private. They would not have agreed to give up their privacy unless given no other choice.

95.    Plaintiffs believed that they were authorizing a legal look into their private information by Defendants, but have since learned that Defendants' access was unlawful. Any consent Plaintiffs may have given, legal or not, would not change the fact that they gave up something they value, namely their privacy.

96.    Had Plaintiffs known that Defendants' disclosure could potentially violate the FCRA, thus depriving Defendants of the legal permission to obtain their consumer reports, Plaintiffs would not have authorized Defendants to obtain their reports.

**C.    Defendants Acted Willfully.**

97.    Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

98.    Defendants obtained or had available substantial written materials which apprised them of their duties under the FCRA.

99.     The written disclosure which precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, stand-alone form. *EEOC v. Video Only, Inc*., 2008 U.S. Dist. LEXIS 46094, 2008 WL 2433841 (D. Or. June 11, 2008); *Reardon v. ClosetMaid Corporation*, 2011 U.S. Dist. LEXIS 45373, 2011 WL 1628041 (W.D. Pa. Apr. 27, 2011).

100.    Defendants knew that they had an obligation to provide a standalone disclosure and obtain the consumer's authorization before procuring a consumer report. They attempted, but failed to meet this requirement by presenting the two forms challenged here. That Defendants used any forms at all confirms their awareness of the FCRA's requirements for the procurement of consumer reports in the employment context.

101.    The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

102.    In accordance with their standard procedures, the consumer reporting agencies from which Defendants acquired consumer reports during the five years preceding the filing of this lawsuit, including Sterling and iiX, required Defendants to certify that they would comply with the stand-alone disclosure provisions of the FCRA.

103.    Before procuring Plaintiffs' report, Defendants did, in fact, certify to Sterling, iiX, and other consumer reporting agencies that they would comply with the stand-alone disclosure and authorization provisions of the FCRA.

104.    In their contracts with Sterling and iiX, Defendants also agreed that before obtaining a consumer report, Defendants would provide a disclosure in writing to the consumer

that a consumer report will be obtained for employment purposes and that such disclosure will be made in a document consisting solely of the disclosure.

105.     Despite knowing of these legal obligations, Defendant acted consciously in breaching their known duties and depriving Plaintiffs and other members of the class of their rights under the FCRA.

106.     By systematically inserting extraneous information into Plaintiffs' and other class members' disclosures, Defendants willfully violated 15 U.S.C. § 1681b(b)(2)(A).

107.     As a result of these FCRA violations, Defendants are liable to Plaintiffs and to the members of each Class, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n & § 1681o.

108.     In the alternative to the Plaintiffs' allegations that these violations were willful, they allege that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. § 1681o.

## ALLEGATIONS APPLICABLE TO EACH COUNT

109.     **Numerosity.  FED. R. CIV. P. 23(a)(1).**  There are thousands of Class members so that joinder of all is impractical. The names and addresses of the Class members for each Class are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

110.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of each Class. These questions predominate over the questions affecting only individual members.   The common legal and factual questions for Counts I and II include, among other things, whether

Defendants' standard procedure violated 15 U.S.C. § 1681b(b)(2)(A)(i) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure, whether Defendants did so willfully, and the proper measure of statutory damages. The common legal and factual questions for Count III include, among other things, whether the legally insufficient disclosure in the General form and in the Driving Record form tainted the authorizations so that the consumer report was provided without a proper purpose under the FCRA, whether Defendants did so willfully, and the proper measure of statutory damages.

111. **Typicality. FED. R. CIV. P. 23(a)(3))**. Plaintiffs' claims are typical of the claims of each Class member in each respective Class. Plaintiffs for class certification purposes seek only statutory and punitive damages. Plaintiffs would only seek individual or actual damages if class certification is denied. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of each of the Classes.

112. **Adequacy.** Plaintiffs are adequate representatives of the each of the Classes because their interests coincide with, and are not antagonistic to, the interests of the members of each of the Classes they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to prosecute this action vigorously. FED. R. CIV. P. 23(a)(4). Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the Class.

113. **Superiority.** Questions of law and fact common to the Class members of each of the respective Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3). The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the

complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

114. Plaintiffs and the Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

115. Plaintiffs and the Class are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

### COUNT ONE: VIOLATION OF THE FCRA § 1681b(b)(2)(A)(i) Regarding "General" Form

116. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

117. Plaintiffs bring this action on behalf of the following Class, of which they are members:

> All natural persons residing in the United States and its territories who, within five years prior to the filing of this action and extending through the resolution of this action, was the subject of a consumer report used by Defendants for employment purposes and to whom Defendants provided a written disclosure containing language substantially similar to the "General" form provided to Plaintiffs and described herein.

Excluded from the class definition are any employees, officers and directors of Defendants, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendants.

## COUNT TWO: VIOLATION OF THE FCRA § 1681b(b)(2)(A)(i)
### Regarding "Driving Record" Form

118.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

119.     Plaintiffs bring this action on behalf of the following Class, of which they are members:

 All natural persons residing in the United States and its territories who, within five years prior to the filing of this action and extending through the resolution of this action, was the subject of a consumer report used by Defendants for employment purposes and to whom Defendants provided a written disclosure containing language substantially similar to the "Driving Record" form provided to Plaintiffs and described herein.

Excluded from the class definition are any employees, officers and directors of Defendants, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendants.

## COUNT THREE: VIOLATION OF THE FCRA § 1681b(b)(2)(A)(ii)
### Lack of Proper Authorization

120.     Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

121.     Plaintiffs bring this action on behalf of the following Class, of which they are members:

All natural persons residing in the United States and its territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendants obtained a consumer report for employment purposes using either the General or Driving Record forms.

Excluded from the class definition are any employees, officers and directors of Defendants, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendants.

**COUNT FOUR: VIOLATION OF THE FCRA § 1681b(b)(2)(A)**
**Impermissible Pulling of Reports**

122. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

123. Plaintiffs bring this action on behalf of the following Class, of which they are members:

All natural persons residing in the United States and its territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendants obtained a consumer report for employment purposes using a disclosure form identifying "Orange Lake Resorts" as the entity authorized to obtain the report.

Excluded from the class definition are any employees, officers and directors of Defendants, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendants.

124. This Count differs from the previous Counts, as it is based on the Defendants' use of a generic disclosure form to obtain reports for all of its entities, but names a trade-named entity—"Orange Lakes Resorts"—as the party obtaining the reports.

125. Every paragraph in this Complaint is hereby incorporated into every other paragraph.

WHEREFORE, Plaintiffs and the Class Members of each respective Class pray for relief as follows:

A. an Order certifying the proposed Classes herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

B.    the creation of a common fund available to provide notice of and remedy Defendant's FCRA violations;

C.    statutory and punitive damages;

D.    injunctive and declaratory relief, when and if appropriate;

E.    attorneys' fees, expenses, and costs;

F.    pre-judgment and post-judgment interest as provided by law; and

G.    such other relief the Court does deem just, equitable and proper.


**TRIAL BY JURY IS DEMANDED.**

**EDWIN DEAN EPPS,**
**OLIVIA C. TORRES AND**
**RICHARD (RICK) G. JONES,**
**for themselves and on behalf**
**of all similarly situated individuals.**

By: _____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Elizabeth Hanes, VSB #75574
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone:  (757) 930-3660
Fax:  (757) 930-3662
Email: lenbennett@clalegal.com
        craig@clalegal.com
        elizabeth@clalegal.com

Christopher Colt North, VSB #16955
**THE CONSUMER & EMPLOYEE RIGHTS LAW**
**FIRM, P.C.**
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:  (757) 873-8375
Email: cnorthlaw@aol.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2017, I caused the foregoing document to be filed with the Clerk of the Court using the Clerk's CM/ECF system. That system then sent a notice of electronic filing to all Counsel of Record.

_____/s/_____
Leonard A. Bennett, VSB #37523
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
