UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| EDWIN DEAN EPPS, <br> OLIVIA C. TORRES, and <br> RICHARD (RICK) G. JONES, JR., <br> for themselves and on behalf of all <br> similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> ORANGE LAKE COUNTRY CLUB, INC., <br> d/b/a Orange Lake Resort and Country <br> Club, Orange Lake Resort and <br> Country Club, Inc., and Orange <br> Lake Resorts, <br><br> and <br><br> OLCC Virginia, LLC, <br><br> and <br><br> Orange Lake Holdings, LLP, <br> d/b/a Orange Lake Resorts, <br><br> Defendants, <br><br> and <br><br> ORANGE LAKE COUNTRY CLUB, INC., <br> OLCC VIRGINIA, LLC, and <br> ORANGE LAKE HOLDINGS, LLP, <br><br> Third Party Plaintiffs, <br><br> v. <br><br> STERLING INFOSYSTEMS, INC. <br> d/b/a STERLINGBACKCHECK, | Case No. 3:17-CV-00253-JAG |

## THIRD PARTY COMPLAINT

Third Party Plaintiffs Orange Lake Country Club, Inc. ("OLCCI"), OLCC Virginia, LLC ("OLCCVA"), and Orange Lake Holdings, LLP ("OLH") (sometimes together the "Third-Party Plaintiffs"), by and through their undersigned counsel and pursuant to Federal Rule of Civil Procedure 14, hereby file this Third Party Complaint against and sue Third Party Defendant Sterling Infosystems, Inc. d/b/a SterlingBackcheck ("Sterling"), and allege as follows:

### Parties, Jurisdiction and Venue

1.      Third Party Plaintiff OLCCI is Florida corporation maintaining its principal place of business is 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747.

2.      Third Party Plaintiff OLCCVA is a Delaware corporation maintaining its principal place of business located at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747.

3.      Third Party Plaintiff OLH is a Florida limited liability partnership maintaining its principal place of business located at 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747.

4.      Third Party Defendant Sterling is a Delaware corporation maintaining its principal place of business 249 West 17th Street, New York City, New York 10011.

5.      Assuming that Plaintiffs' claims against Defendants are properly before this Court, this Court has jurisdiction over all of Third Party Plaintiffs' claims in this Third Party Complaint under 28 U.S.C. § 1367(a) because (a) this Court has original jurisdiction over this action, and (b) Third Party Plaintiffs' claims are so related to claims in the action initiated by

Plaintiffs that they form part of the same case or controversy under Article III of the United States Constitution.

6. Sterling is subject to the personal jurisdiction of this Court pursuant to Va. Code § 8.01-32.1, as (a) the actions of Sterling caused tortious injury in this Commonwealth, and (b) Sterling engaged, and is engaged, in substantial and not isolated business activities within the Commonwealth of Virginia.

7. Venue is proper under 28 U.S.C. § 1391(b), and Federal Rule of Civil Procedure 14, because a substantial part of the events or omissions giving rise to Third Party Plaintiffs' claims occurred in this District, and because Sterling is subject to the personal jurisdiction in this District.

**FACTS**

8. OLCCI owns and operates certain timeshare resorts in the United States, particularly Florida and Arizona. These resorts consist of thousands of accommodation units, extensive recreational and commercial improvements, landscaped areas, roadways and parking.

9. OLCCVA owns and operates certain timeshare resorts in Virginia. These resorts consist of thousands of accommodation units, extensive recreational and commercial improvements, landscaped areas, roadways and parking. OLCCVA is a corporate affiliate of OLCCI.

10. OLH is a holding company that is an owner of OLCCI, and through OLCCI, OLCCVA.

11. Sterling is, among other things, a background-checking vendor licensed to do business in Virginia.

12. Plaintiffs Edwin Dean Epps ("Epps"), Olivia C. Torres ("Torres") and Richard G. Jones, Jr. ("Jones") (sometimes collectively the "Plaintiffs"), filed a purported First Amended Class Complaint (the "Amended Complaint") against Third Party Plaintiffs alleging supposed violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). Plaintiffs assert four (4) claims against Third Party Plaintiffs for purported violations of 15 U.S.C. § 1681b(b)(2).

13. According to the Amended Complaint, § 1681b(b)(2)(A)(i) of the FCRA requires that before a consumer report is obtained for employment purposes (such as a criminal history background check), the person procuring the report must provide the consumer with a clear and conspicuous disclosure, in writing, in a document that consists solely of the disclosure (the "Disclosure"). And according to the Amended Complaint, § 1681b(b)(2)(A)(ii) requires that the consumer authorize, in writing, the procurement of the report (the "Authorization"). The Disclosure and Authorization may be made on a single document.

14. Plaintiffs allege in the Amended Complaint that Third Party Plaintiffs violated § 1681b(b)(2)(A) by failing to provide Plaintiffs with a sufficient Disclosure and Authorization form. Specifically, Plaintiffs allege that Third Party Plaintiffs procured a consumer report for employment purposes without disclosing that they were doing so in a document that consists solely of the Disclosure and Authorization, as required by § 1681b(b)(2)(A) of the FCRA.

15. Third Party Plaintiffs deny all liability asserted against them in the Amended Complaint.

16. As Plaintiffs recognize in the Amended Complaint, Third Party Plaintiffs engaged Sterling to provide certain pre-employment screening services to Third Party Plaintiffs. These screening services consisted of FCRA compliance assistance, including creating and providing

4

Third Party Plaintiffs with a criminal background check Disclosure and Authorization form required under the FCRA.

        **A.**     **Sterling's Contractual and Non-Contractual Duties to Third-Party Plaintiffs.**

17.     Sterling is a company that operates across the United States, and holds itself out as an expert specializing in creating and procuring consumer reports, especially criminal history background checks. Moreover, Sterling represented to Third Party Plaintiffs that it had the expertise necessary to assist Third Party Plaintiffs in complying with FCRA's requirements related to the procurement of criminal history background checks.

18.     At all times relevant to the Amended Complaint, Third Party Plaintiffs hired Sterling as a vendor to provide various pre-employment screening services related to applicants for employment with each Third Party Plaintiff. In particular, Third Party Plaintiffs contracted with Sterling for the procurement of criminal history background checks. As part of that procurement process, Sterling was required to provide the Third Party Plaintiffs with an FCRA-compliant Disclosure and Authorization form for criminal history background checks.

19.     On December 5, 2011, Third Party Plaintiffs and Sterling entered into that certain Master Service Agreement for Pre-Employment Screening Services (the "MSA"). A true and correct copy of the MSA is attached to this Third Party Complaint as <u>Exhibit "A"</u>.

20.     Under § 4 of the MSA, Sterling agreed to provide "screening services, which include, but may not be limited to, Social Security Traces and Criminal Background Searches." Sterling further agreed that it would "take responsibility for providing its best efforts in ***performing its services in a timely and accurate manner consistent with that of a professional pre-employment screening agency***." (emphasis added).

21. Section 4 of the MSA also expressly stated that Sterling would "in carrying out its obligations hereunder, *adhere to … all applicable federal, state and local laws*." (emphasis added). Sterling was thus obligated to strictly comply with the legally mandated requirements of the FCRA.

22. Additionally, under § 9 of the MSA, Sterling agreed to "indemnify, defend and hold harmless [the Third Party Plaintiffs] from any and all actions, causes of action, claims demands, costs, liabilities, expenses and damages (including reasonable attorneys' fees) to the extent arising out of its breach of [the MSA] or its negligence or intentional misconduct."

23. The MSA also clearly required Sterling to secure an insurance policy for Third Party Plaintiffs. Under § 15 of the MSA, Sterling was obligated to obtain and keep in force during the term of the MSA, a comprehensive liability insurance policy insuring Third Party Plaintiffs (and others) against any and all lability arising out of or in any way connected to the Professional Services, work or activities performed for Third Party Plaintiffs. The insurance policy was also supposed to cover any and all potential claims, losses, or occurrences that may arise from the performance, non-performance, negligent performance, or grossly negligent performance of the services that Sterling provided to Third Party Plaintiffs.

24. Third Party Plaintiffs relied upon Sterling, and specifically contracted with it, based upon Sterling's stated ability and agreement to assist with FCRA compliance, and, in particular, its agreement to provide Third Party Plaintiffs with a FCRA-compliant Disclosure and Authorization form. Based upon the terms of the MSA, Sterling well well-aware of why Third Party Plaintiffs entered into the MSA, and what was required by Sterling under the MSA.

25. After the MSA was executed, Sterling created and provided all Third Party Plaintiffs with the criminal background check Disclosure and Authorization form required under

6

the FCRA (the "Sterling Disclosure Form"). The Sterling Disclosure Form contained the Disclosure and Authorization required under the FCRA on a single document.

26. After the MSA became effective, Third Party Plaintiffs began using the Sterling Disclosure Form. In general, after a Third Party Plaintiff extended a conditional job offer to an applicant, a Third Party Plaintiff would request the applicant's permission to conduct pre-employment screening of the applicant.

27. This pre-employment screening consisted of a criminal history background check. A Third Party Plaintiff would ask each job applicant to review and sign – in writing or electronically – a Sterling Disclosure Form.

28. At all times material to the Amended Complaint, the Sterling Disclosure Form was drafted by Sterling and provided directly by Sterling to Third Party Plaintiffs for the purpose of complying with the disclosure and authorization requirements of § 1681b(b)(2)(A). And at all times material to the Amended Complaint, Third Party Plaintiffs believed that the Sterling Disclosure Form complied with the FCRA.

29. To Third Party Plaintiffs' knowledge, Sterling alone generated the content of the Sterling Disclosure Form. Sterling provided the Sterling Disclosure Form directly to Third Party Plaintiffs. Third Party Plaintiffs would then use the Sterling Disclosure Form – either a written hard copy, or through Sterling's website – without altering the Sterling Disclosure Form's content. The Sterling Disclosure Form disclosed that a criminal history background check and report would be procured, and the applicant (usually) expressly authorized the procurement of the report.

30. From time to time, Sterling would slightly update the Sterling Disclosure Form. In doing so, Sterling would represent to Third Party Plaintiffs that the changes reflected changes

7

in the law, especially the FCRA, relating to the procurement of a consumer report concerning an applicant's criminal history. Based upon Sterling's conduct and representations, Third Party Plaintiffs reasonably understood that the Sterling Disclosure Form was FCRA-compliant.

31. Sterling charged Third Party Plaintiffs separately for each criminal history background check it conducted based upon the receipt of a Sterling Disclosure Form signed by an applicant. Sterling thus knew that that it was conducting criminal history background checks for each Third Party Plaintiff.

32. In addition to (or in lieu of) Sterling's obligations to Third Party Plaintiffs under the MSA, Sterling owed Third Party Plaintiffs a duty to perform its pre-employment screening services – especially the provision of a FCRA-compliant Disclosure and Authorization form – with reasonable care and diligence.

33. Indeed, throughout Sterling's relationship with the Third Party Plaintiffs, Sterling knew that Third Party Plaintiffs were justifiably relying upon Sterling's professed expertise in FCRA compliance. Thus, when Sterling undertook providing its services to Third Party Plaintiffs, and billed Third Party Plaintiffs for those services (which they paid without fail), Sterling was required to exercise that standard of care that would be exercised by a reasonably prudent person in similar circumstances. This meant providing Third Party Plaintiffs with a FCRA-compliant Disclosure and Authorization form.

    B.    **<u>Plaintiffs' Applications For Employment.</u>**

34. According to the Amended Complaint, Epps applied for a job with OLCCVA in June 2014.

35. According to the Amended Complaint, Torres and Jones applied for jobs with OLCCVA in April 2015.

36. Each Plaintiff received an offer of employment that was conditional upon each of them passing a criminal history background check. To that end, after receiving the conditional offer of employment, Third Party Plaintiffs asked each Plaintiff to review and sign a Sterling Disclosure Form for the purpose of complying with § 1681b(b)(2)(A).

37. Epps was presented with a printed copy of his Sterling Disclosure Form, which he read and signed. In doing so, Epps knowingly authorized, in writing, Sterling to perform a criminal history background check.

38. For Torres and Jones, they were sent an email which included an embedded URL hyperlink that took them to Sterling's website. Once Torres and Jones were at Sterling's website, they were presented with their respective Sterling Disclosure Form, which they each read and electronically signed. In doing so, both Torres and Jones knowingly authorized, in writing, Sterling to perform a criminal history background check.

39. After receiving Plaintiffs' signed authorizations to conduct a criminal background check, Sterling procured a report on each Plaintiff's criminal history. Because no red flags were raised by each Plaintiff's criminal history, all three Plaintiffs were hired by OLCCVA.

40. On or about April 29, 2016, Torres resigned in lieu of termination.

41. According to the Amended Complaint, Epps' period of employment with OLCCVA ended in December 2015, and Jones' period of employment with OLCCVA ended in May 2016.

### Count I – Breach of Contract
### Third Party Plaintiffs against Sterling

42. This is an action by Third Party Plaintiffs against Sterling for breach of the MSA.

43. The allegations of paragraphs 1 through 41 above are restated and incorporated herein by this reference.

44. The MSA constitutes a valid and binding contract between Third Party Plaintiffs and Sterling.

45. Third Party Plaintiffs fully performed their obligations under the MSA.

46. Under the MSA, Sterling was required to, among other things:

   a. Provide Third Party Plaintiffs with a criminal history background check Disclosure and Authorization form that complied with § 1681b(b)(2) of the FCRA; and

   b. Perform its services in a timely and accurate manner consistent with that of a professional pre-employment screening agency;

47. For the time period material to the events alleged in the Amended Complaint, Third Party Plaintiffs engaged with Sterling to assist with FCRA compliance, including by providing Third Party Plaintiffs with a FCRA-compliant Disclosure and Authorization form for use in connection with conducting criminal history background checks.

48. If the Sterling Disclosure Form provided by Sterling to Third Party Plaintiffs failed to comply with the FCRA, or was in any way improper, as alleged in the Amended Complaint, that failure was solely because of Sterling's material breaches of its obligations under the MSA.

49. If the Sterling Disclosure Form provided by Sterling to Third Party Plaintiffs did not comply with § 1681b(b)(2)(A), as alleged in the Amended Complaint, then Sterling materially breached its obligations to Third Party Plaintiffs under the MSA by failing to perform its services in a timely, accurate and skillful manner consistent with that of a professional pre-employment screening agency, as well by failing to perform its services in compliance with all applicable federal, state and local laws.

50. Sterling has no legal excuse or justification for its material breaches and non-performance of its obligations under the MSA.

51. Third Party Plaintiffs have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the claims in the Amended Complaint, and will continue to be damaged in an amount equal to any legal fees, costs or expenses incurred in continuing to defend against Plaintiffs' claims in the Amended Complaint, and in an amount equal to any monies Third Party Plaintiffs may pay to settle or otherwise resolve Plaintiffs' claims.

52. Sterling's material breaches of the MSA are the direct and proximate cause of Third Party Plaintiffs' injuries and damages in an amount to be established at trial.

53. Pursuant to Section 13 of the MSA, Third Party Plaintiffs are entitled to recover their reasonable attorneys' fees, paralegals' fees, and costs.

WHEREFORE, Third Party Plaintiffs hereby demand judgment against Sterling for all damages available under the law, attorneys' fees, paralegals' fees and costs available under the MSA, and any other relief that may be just or necessary under the circumstances.

### Count II – Breach of Contract
**Third Party Plaintiffs against Sterling**

54. This is an action by Third Party Plaintiffs against Sterling for breach of the MSA.

55. The allegations of paragraphs 1 through 45 above are restated and incorporated herein by this reference.

56. Under the MSA, Sterling was required to, among other things:

    a. Indemnify, defend and hold harmless Third Party Plaintiffs from any and all actions, causes of action, claims, demands, costs, liabilities, expenses and

damages (including reasonable attorneys' fees) to the extent arising out of its breach of this Agreement or its negligence or intentional misconduct; and

  b. At its expense, obtain and keep in force a policy of comprehensive liability insurance insuring Third Party Plaintiffs against any and all liability arising out of or in any way connected with Sterling's provision of services to Third Party Plaintiffs, and covering any and all potential claims, losses or occurrences that may arise from the performance, non-performance, negligent performance, or grossly negligent performance of the services that Sterling provided to Third Party Plaintiffs.

57. Since being put on notice of Plaintiffs' purported claims against Third Party Plaintiffs in this action, Third Party Plaintiffs have repeatedly demanded that Sterling (a) indemnify and defend Third Party Plaintiffs against Plaintiffs' purported claims, and (b) provide Third Party Plaintiffs with a copy of the insurance policy that Sterling was required to obtain and keep in force pursuant to the MSA.

58. Despite these demands, Sterling steadfastly refused to provide the indemnification and defense to which Third Party Plaintiffs are entitled under the MSA.

59. Despite these demands, Sterling also steadfastly refused to provide Third Party Plaintiffs with a copy of the comprehensive liability insurance policy it was required to obtain and keep. In fact, Sterling never timely obtained or kept the comprehensive liability insurance policy required under the MSA.

60. Sterling's failures constitute material breaches of the MSA, for which Sterling has no legal excuse or justification.

61. Sterling failed to timely cure its material breaches of the MSA.

62. On August 21, 2017, Third Party Plaintiffs terminated the MSA.

63. Third Party Plaintiffs have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the claims in the Amended Complaint, and will continue to be damaged in an amount equal to any legal fees, costs or expenses incurred in continuing to defend against Plaintiffs' claims in the Amended Complaint, and in an amount equal to any monies Third Party Plaintiffs may pay to settle or otherwise resolve Plaintiffs' claims.

64. Sterling's material breaches of the MSA are the direct and proximate cause of Third Party Plaintiffs' injuries and damages in an amount to be established at trial.

65. Pursuant to Section 13 of the MSA, Third Party Plaintiffs are entitled to recover their reasonable attorneys' fees, paralegals' fees, and costs.

WHEREFORE, Third Party Plaintiffs hereby demand judgment against Sterling for all damages available under the law, attorneys' fees, paralegals' fees and costs available under the MSA, and any other relief that may be just or necessary under the circumstances..

## Count III – Negligence
### Third Party Plaintiffs against Sterling

66. This is an action by Third Party Plaintiffs against Sterling for negligence to the extent that the duties described herein are not imposed under the MSA.

67. The allegations of paragraphs 1 through 41 above are restated and incorporated herein by this reference.

68. Sterling holds itself out and represented to Third Party Plaintiffs that it is an expert in FCRA compliance, including the creation and supply of a FCRA-compliant Disclosure and Authorization form.

69. Sterling undertook to provide all Third Party Plaintiffs with a Disclosure and Authorization form required under the FCRA for Sterling to conduct criminal history background checks concerning job applicants of Third Party Plaintiffs. Since at least 2011, Sterling attempted to do so by creating and providing Third Party Plaintiffs with the Sterling Disclosure Form. Sterling represented to the Third Party Plaintiffs that the Sterling Disclosure Form complied with the FCRA.

70. Sterling billed Third Party Plaintiffs for providing the Sterling Disclosure Form, and running criminal history background checks concerning job applicants of Third Party Plaintiffs based upon each applicant's authorization – including Plaintiffs' – contained on the Sterling Disclosure Form.

71. Sterling owed Third Party Plaintiffs a duty to perform its pre-employment screening services – including providing a FCRA-compliant Disclosure and Authorization form – with reasonable care that would be exercised by a reasonably prudent person in similar circumstances.

72. A reasonably prudent person in similar circumstances would provide a Disclosure and Authorization form that complied with the requirements of § 1681b(b)(2)(A) of the FCRA.

73. If, as alleged in the Amended Complaint, the Sterling Disclosure Form provided to Third Party Plaintiffs did not comply with the FCRA, and resulted in the improper procurement of Plaintiffs' (and the putative class members') consumer reports, it was because Sterling breached and failed to meet the standard of care required.

74. Third Party Plaintiffs have been damaged in an amount equal to any legal fees, costs, or expenses they have incurred in defending the claims in the Amended Complaint, and will continue to be damaged in an amount equal to any legal fees, costs or expenses incurred in

continuing to defend against Plaintiffs' claims in the Amended Complaint, and in an amount equal to any monies Third Party Plaintiffs may pay to settle or otherwise resolve Plaintiffs' claims.

75. Sterling's breaches of its duties to Third Party Plaintiffs are the direct and proximate cause of Third Party Plaintiffs' injuries and damages in an amount to be established at trial.

WHEREFORE, Third Party Plaintiffs hereby demand judgment against Sterling for all damages available under the law, and any other relief that may be just or necessary under the circumstances.

Respectfully submitted,

*/s/ Theresa A. Queen*
Michael R. Sklaire
VSB No. 74354
Theresa A. Queen
VSB No. 44462
*Counsel for Defendants*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
Email: sklairem@gtlaw.com
Email: queent@gtlaw.com

-and-

I. William Spivey, II, *pro hac vice*
Colin S. Baker, *pro hac vice*
*Counsel for Defendants*
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 450
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 841-1295
Email: spiveyw@gtlaw.com
Email: bakerco@gtlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of August, 2017, I electronically filed the foregoing **Third Party Complaint** with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Christopher Colt North, Esquire
William Downing, Esquire
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Email: cnorth@aol.com
*Counsel for Plaintiffs Consumer Litigation Associates, P.C.*

Craig C. Marchiando, Esquire
Elizabeth W. Hanes, Esquire
Leonard A. Bennett, Esquire
Consumer Litigation Associates
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 (O)
(757) 930-3662 (F)
Email: craig@clalegal.com
Email: lenbennett@clalegal.com
Email: elizabeth@clalegal.com
*Co-counsel for Plaintiffs Consumer Litigation Associates, P.C.*

*/s/ Theresa A. Queen*
Theresa A. Queen
VSB No. 44462
*Counsel for Defendants*
GREENBERG TAURIG, LLP
1750 Tysons Boulevard
Suite 1000
McLean, Virginia 22102
Telephone: (703) 749-1300
Facsimile: (703) 749-1301
Email: queent@gtlaw.com