## MASTER SERVICE AGREEMENT
## FOR PRE-EMPLOYMENT SCREENING SERVICES

THIS MASTER AGREEMENT FOR PRE-EMPLOYMENT SCREENING SERVICES (hereinafter referred to as the "Agreement") is entered into as of this 5TH day of December, 2011, the "Effective Date"), by and between **ORANGE LAKE COUNTRY CLUB, INC.**, a Florida corporation, whose address is 8505 West Irlo Bronson Memorial Highway, Kissimmee, Florida 34747 ("OLCC"), and **STERLING INFOSYSTEMS, INC.**, whose address is 249 West 17th Street, New York, New York 10011 (hereinafter referred to as, "Service Provider").

### RECITALS:

**WHEREAS**, OLCC is management company of that certain resort known as Orange Lake Resort and Country Club located at 8505 W. Irlo Bronson Memorial Hwy., Kissimmee, FL 34747 (the "Resort"); and

**WHEREAS**, OLCC believes that utilizing the services of pre-employment screening firms enhances the possibility of meeting its strategic hiring objectives; and

**WHEREAS**, OLCC desires Service Provider to perform pre-employment screening services for job candidates and employees at OLCC as described and communicated to Service Provider; and

**WHEREAS**, Service Provider will perform pre-employment screening services on OLCC job candidates and employees as requested and described by OLCC; and

**WHEREAS**, Service Provider desires to provide OLCC with such services as set forth in more detail below.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Recitals.** The above recitals are true and correct, form a material part of this Agreement and are incorporated herein by this reference.

2. **Term of Agreement.** The initial term of this Agreement (the "Term") shall commence on the Effective Date above and shall continue for the term of twenty-four (24) months. This Agreement shall remain in effect thereafter for a series of like periods unless either party terminates this Agreement upon thirty (30) days' advance written notice to the other party in accordance with Paragraph numbered 8. OLCC will utilize Service Provider as its primary employment screening background checking vendor by OLCC during the initial 24-month term.

**EXHIBIT "A"**

3. **Equal Opportunity Employer.** It is the policy of OLCC to provide equality of opportunity for any qualified Candidate for employment irrespective of race, color, national origin, religion, gender, age, disability, sexual orientation or veteran status. All employment decisions are based so as to further the principle of Equal Employment Opportunity with OLCC. Service Provider conducting pre-employment screening services on OLCC job candidates and employees must agree to the Equal Opportunity requirements as so stated.

4. **Professional Services.** During the Term of this Agreement, Service Provider shall provide pre-employment screening services, which include, but may not be limited to, Social Security Traces and Criminal Background Searches. OLCC shall have sole discretion in determining the pre-employment screening services to be performed, as will be described by OLCC and communicated to Service Provider during the Term. OLCC may change or alter such pre-employment screening services as it determines is necessary in its sole discretion.

Service Provider will, in connection with the pre-employment screening services provided to OLCC, provide OLCC with access to all of its services and take responsibility for providing its best efforts in performing its services in a timely and accurate manner consistent with that of a professional pre-employment screening agency. Service Provider shall also immediately provide to OLCC all pre-employment screening documentation upon request.

Service Provider warrants and represents that it shall, in carrying out its obligations hereunder, adhere to OLCC employment policies as well as all applicable federal, state, and local laws.

Service Provider and its representatives shall be authorized to communicate (including telephone, facsimile, E-Mail, Internet, and mail) only with the OLCC representatives designated by OLCC's Human Resources Department. Communication or contact, whether verbal or written between the Service Provider and any other employees of OLCC, may result in termination of this Agreement.

5. **Compensation.** OLCC will pay a service fee to Service Provider for all pre-employment screening services performed by Service Provider. Service fees are set forth in the attached **Exhibit "A,"** as may be applicable and incorporated herein by reference. OLCC will not pay any other fees or expenses other than said service fees. If such services fees increase from the prices contained in **Exhibit "A,"** Service Provider is required to immediately notify OLCC of such change(s) and must obtain OLCC's prior approval before billing OLCC at the new increased service fee prices. Service Provider will provide OLCC with an invoice bi-weekly summarizing all work orders and associated charges. Payment is due within forty-five (45) days upon receipt of said invoices.

6. **Confidentiality.** During the term of this Agreement and continuing after termination of this Agreement, each party agrees that, during the term hereof and thereafter, it will hold in strictest confidence and will not use for its, or a third party's benefit, without the express authorization of an officer of the other party, any confidential or proprietary information of the other party. Moreover, all information and/or documentation provided by OLCC to Service Provider and all information and/or documentation in the possession, custody or control of Service Provider and its representatives which relates in any way to OLCC shall remain confidential and shall not be disclosed or produced to any third-party to this Agreement. Service Provider and it representatives shall take all necessary measures and precautions to ensure that all such information and documentation remains confidential and is not produced, whether intentionally or inadvertently, to any third-party to this Agreement.

7. **Relationship of Parties.** It is understood and agreed that Service Provider, in performing its professional services described in this Agreement, shall be considered at all times and in every manner an independent contractor with OLCC. Nothing in this Agreement, expressed or implied, is intended or shall be construed to create a joint venture, partnership or other business relationship between the parties other than the contractual terms contained in this Agreement. Furthermore, nothing contained herein shall be construed to confer upon any persons, including, but not limited to, employees, agents or independent contractors of Service Provider, other than the parties hereto, any rights under or by reason of this Agreement.

Service Provider acknowledges that Service Provider is responsible for all withholding, social security, self-employment, worker's compensation, unemployment compensation and all other employment taxes generally paid by an employer or an employee. Service Provider will not be treated as an employee for federal tax purposes.

All persons employed or engaged by Service Provider in furtherance of its business activities under this Agreement shall remain solely in the employ or service of Service Provider, and shall for all purposes be considered the employees, agents or independent contractors of Service Provider. Service Provider shall assume all and every responsibility for such employees, agents or independent contractors including but not limited to worker's compensation coverage, if required, liability insurance, federal withholding, FICA and any and all other federal, state and local taxes.

OLCC shall in no manner and for no purpose whatsoever be responsible for any benefits, taxes or other conditions of employment or service for Service Provider or any persons working for Service Provider. Service Provider will provide acceptable evidence to OLCC that all persons employed or used by Service Provider are properly and adequately insured and does hereby indemnify and hold OLCC harmless from and against any and all cost, fees, fines, damages, judgments, taxes and the like associated in any way with Service Provider, Service Provider's employees, agents or independent contractors or any other persons engaged in any manner or capacity by Service Provider to fulfill Service Provider's obligations under this Agreement. Service Provider shall obtain and maintain all occupational and other licenses as necessary or appropriate.

8. **Termination of Agreement.** Either party shall be entitled to terminate this Agreement at any time, "with cause," upon thirty (30) days' advance written notice to the other party. "With cause" shall mean that the non-terminating party is provided a 45-day period to cure the terminating party's reason(s) for wanting to terminate the Agreement and fails to do so to the satisfaction of the terminating party. Notwithstanding the foregoing, any conduct by Service Provider which violates any federal, state or local law, rule, regulation, ordinance or administrative finding, which constitutes fraudulent or unprofessional behavior or which otherwise violates the terms of this Agreement, shall entitle OLCC to immediately terminate this Agreement with no advance written notice and no opportunity for Service Provider to cure. Paragraphs numbered 5, 6, 7, and 10 shall survive termination of this Agreement for any reason.

9. **Indemnification and Hold Harmless.** Each party agrees to indemnify, defend and hold harmless the other party and its officers, directors, employees and successors harmless from any and all actions, causes of action, claims, demands, costs, liabilities, expenses and damages (including reasonable attorney's fees) to the extent arising out of its breach of this Agreement or its negligence or intentional misconduct. In no event shall either party be liable to the other for any indirect, special, incidental or consequential damages,

including lost profits or lost data, even if the responsible party had been made aware of the possibility of such damages.

10. **Successors and Assigns.** This Agreement shall be binding upon the parties hereto and their respective legal representatives, successors, and assigns.

11. **Entire Agreement; Modifications.** No prior or present negotiations, correspondence, agreements or representations shall be binding upon OLCC or Service Provider unless included in this Agreement. No modification or change in this Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties to be bound hereby.

12. **Headings.** The paragraph headings contained in this Agreement are inserted for convenience of reference only and shall not alter, define, or be used in construing the text of any paragraph.

13. **Litigation.** In connection with any litigation arising out of the transaction or the relationship of the parties evidenced by this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, paralegals' fees, and costs, including, without limitation, fees and costs incurred upon the appeal of any decision and in any bankruptcy or reorganization proceedings.

14. **Notices.** Whenever this Agreement requires or permits any notice or other communication by one party to the other, the same shall be in writing and sent by certified United States Mail, return receipt requested. Notices and communications shall be deemed to have been given on the third day after having been deposited in the mail as provided above. The addresses of the parties for notices and other communications are as follows:

**To Service Provider:**   Sterling Infosystems, Inc.
249 West 17th Street

New York, New York 10011

Attention: _Gordon Blackwell_

To OLCC:          Orange Lake Country Club, Inc.

                            8505 W. Irlo Bronson Memorial Highway

                            Kissimmee, Florida 34747

                            **Attention:** Erin Webb, Esquire

Any of the foregoing may change its address for notices or communications by written notice given in accordance with this paragraph.

15. **Insurance.** Service Provider shall, at Service Provider's expense and prior to the commencement of this Agreement, obtain and keep in force during the term of this Agreement, a policy of Comprehensive Liability Insurance (including Errors & Omissions Insurance) insuring OLCC, Wilson Resort Management Corp., Service Provider and any mortgagee requesting or required to be added to such policy or policies as an additional insured (as their interests may appear) against any and all liability arising out of or in any way connected to the Professional Services, work or activities performed at OLCC by either Service Provider or any third-party acting on Service Provider's behalf, including CRM Global. Further, said insurance shall cover any and all potential claims, losses, or occurrences that may arise from the performance, non-performance, negligent performance, or grossly negligent performance of the services that Service Provider is providing to OLCC. Such insurance shall be in an amount of not less than $1,000,000.00 combined single limit for bodily injury and property damage, $2,000,000 combined aggregate limit. Servicer Provider must provide OLCC with copies of all policies of insurance that shall include, but is not limited to, the Declaration Pages upon execution of this Agreement. Service Provider shall also obtain such insurance and shall be required to comply with worker's compensation laws or other similar federal or state laws for the protection of employees.

16. **Governing Law and Venue.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida, without regard to the conflicts of laws principles thereof. Each party irrevocably (i) agrees that any suit, action or other legal proceeding arising out of or relating to this Agreement may be brought only the appropriate court in Orange County, Florida or the United States District Court for the Middle District of Florida located in Orlando, Florida, (ii) consents, for itself and in

respect of its property, to the jurisdiction of each such court in any such suit, action or proceeding and (iii) waives any objection which it may have to the laying of venue of any such suit, action or proceeding in any of such courts and any claim that any such suit, action or proceeding has been brought in an inconvenient forum.

17. **Waiver.** The failure of either party to exercise any power given it hereunder or to insist upon strict compliance with the terms of this Agreement shall not constitute a waiver of that party's right to later demand strict compliance with the terms hereof. Waiver by a party of any particular default by the other shall not affect or impair the rights with respect to any subsequent defaults of the same or of a different kind, nor shall any delay or omission by a party to exercise any rights arising from any default affect or impair its right as to such default or any future default. Further, no custom or course of dealings of the parties at variance with the terms hereof shall constitute a waiver of that party's right to demand later compliance.

18. **Severability.** Should any part of this Agreement be declared invalid, such decision shall not affect the validity of any remaining portion, which remaining portion shall remain in force and effect as if this Agreement had been executed with the invalid portion eliminated, and it is hereby declared the intention of the parties that they would have executed the remaining portion of this Agreement without including any such part, which may for any reason hereafter be declared invalid, except in instances where the remaining portions are unduly prejudicial to any one party.

19. **Authority.** The person executing this Agreement on behalf of each of the parties hereby warrants that he or she is duly authorized to execute this Agreement on behalf of such party.

20. **Construction of Agreement.** This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that both parties have contributed substantially and materially to the preparation hereof.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year first written above.

| "OLCC" | "Service Provider" |
|---|---|
| Orange Lake Country Club, Inc. | Sterling Infosystems, Inc. |

By: _____  
Erin Webb

As its: Corporate Counsel

12/5/11

By: _____  
Gueron Blackwell

As its: RVP of Sales

12/2/2011

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

# EXHIBIT "A"[1]

| SERVICE | PRICE |
|---|---|
| Social Security Trace & Address Locator | $2.50 |
| UNLIMITED County Criminal Search (No Additional Court Fees) (ALL counties of residence searched for one price) | $17.00 |
| ENHANCED Nationwide Criminal Database Search (Includes primary source verification of any hits) | $5.00 |
| Consumer Credit Reports* | $6.00 |
| Drug Screen - (non-DOT, 5 or 10 panel urine screen collected in-network…includes Medical Review Officer -MRO) | $27.00 |
| Annual Fee – Credited when annual spending exceeds $5,000 | $375.00 |

-Prices based on a volume of "approximately" 2,500 – 3,000 background screens annually.

*Site inspection & 1x fee of $75 is required by credit reporting agencies to do credit reports.

-State Fees…only if required…only Blocked / Closed counties in NY, ME & VT will assess "additional" state fees (NY - $65, ME - $31, VT - $30).

-"Enhanced" Nationwide Database Search automatically triggers a "primary-source" verification search in the County where the "Hit" occurred.

---

[1] All information contained in Exhibit "A" was provided to OLCC by Service Provider.